2017-1524

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### SECURUS TECHNOLOGIES, INC.,

**Appellant**

v.

### GLOBAL TEL*LINK CORPORATION,

**Appellee**

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2015-01221

## APPELLEE'S RESPONSE BRIEF

Jon E. Wright
Michael D. Specht
Michael Bradley Ray
Ryan C. Richardson
**Sterne Kessler Goldstein & Fox PLLC**
1100 New York Avenue, NW
Washington, DC  20005
202.371.2600

*Counsel for Appellee,*
*Global Tel*Link Corporation*

Dated:  June 30, 2017

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Securus Technologies, Inc.    **v.**    Global Tel*Link Corporation

Case No.    17-1524

## CERTIFICATE OF INTEREST

Counsel for the:

☐ (petitioner) ☐ (appellant) ☐ (respondent) ☒ (appellee) ☐ (amicus) ☐ (name of party)

Global Tel*Link Corporation

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Global Tel*Link Corporation | Global Tel*Link Corporation | GTEL Holdings, Inc. |
| | | GTEL Acquisition Corp. |
| | | ASP GTEL Holdco, LLC |
| | | ASP GTEL Investco, LLC |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

None.

Feb 9, 2017

**Date**

/s/ Michael D. Specht

**Signature of counsel**

Please Note: All questions must be answered

Michael D. Specht

**Printed name of counsel**

cc:   Counsel of Record

Reset Fields

# TABLE OF CONTENTS

RULE 47.5 STATEMENT OF RELATED CASES ................................................v

JURISDICTIONAL STATEMENT ........................................................................1

COUNTERSTATEMENT OF THE ISSUES..........................................................2

COUNTER STATEMENT OF THE CASE and FACTS ........................................3

I.   The '068 patent allows completion of prisoner calls that would have
     previously been blocked by a prison's call management system by offering
     alternative billing options to the called party. .................................................4

     A.    The "call management system"............................................................4

     B.    "A call connection request … including a billing-status code."...........8

           1.    Call connection request.............................................................8

           2.    Billing status code....................................................................9

           3.    Including… ..............................................................................10

     C.    Response to Securus's allegations with respect to its '068 patent......12

II.  The prior-art Falcone reference also allows completion of prisoner calls that
     would have previously been blocked by offering alternative billing options
     to the called party.........................................................................................15

           1.    Falcone's call management system...........................................16

           2.    Falcone's customer score functions as the claimed "billing-
                 status code." ............................................................................20

           3.    Including… ..............................................................................21

III. Proceedings before the Board........................................................................23

     A.    Contra Securus, the Board understood the Petition to allege that
           Falcone's call connection request included its customer score...........23

     B.    Contra Securus, GTL's reply did more than argue what is "possible"
           in Falcone's various embodiments......................................................25

     C.    Contra Securus, the Board addressed the "including" requirement....26

     D.    Securus largely wasted its sur-reply...................................................27

SUMMARY OF THE ARGUMENT ......................................................................27

STANDARD OF REVIEW ...................................................................................29

ARGUMENT ........................................................................................................30

I.    The Board properly concluded that the "including" limitation would have
      been obvious over Falcone. ...........................................................................30

      A.    Securus's selective parsing of the Board's decision does not withstand
            careful scrutiny. ...................................................................................30

      B.    The Board did not apply the wrong obviousness standard. ................33

      C.    Substantial evidence supports the Board's finding that Falcone's
            "customer score" is the same as the claimed "billing status code" and
            that it would have been obvious to include it with a phone
            number/transaction request. ...............................................................37

II.   Substantial evidence supports the Board's determination that Falcone
      discloses the claimed "call management system." ......................................38

      CONCLUSION AND RELIEF SOUGHT ............................................................41

# TABLE OF AUTHORITIES

## Cases

*Allergan, Inc. v. Apotex Inc.*
    754 F.3d 952 (Fed. Cir. 2014) ..........................................................39

*Belden Inc. v. Berk-Tek LLC*
    805 F.3d 1064 (Fed. Cir. 2015) ......................................28, 29, 33, 34

*Consol. Edison Co. of N.Y. v. N.L.R.B.*
    305 U.S. 197 (1938).......................................................................30

*In re Applied Materials, Inc.*
    692 F.3d 1289 (Fed. Cir. 2012) .....................................................34

*In re Fritch*
    972 F.2d 1260 (Fed. Cir. 1992) .....................................................39

*In re Gartside*
    203 F.3d 1305 (Fed. Cir. 2000) .....................................................29

*In re Jolley*
    308 F.3d 1317 (Fed. Cir. 2002) .....................................................30

*In re Mouttet*
    686 F.3d 1322 (Fed. Cir. 2012) .....................................................29

*In re Preda*
    401 F.2d 825 (C.C.P.A. 1968) .......................................................39

*In re Watts*
    354 F.3d 1362 (Fed. Cir. 2004) .....................................................29

*InTouch Techs., Inc. v. VGo Commc'ns, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014) ...............................................34, 35

*KSR Int'l Co. v. Teleflex Inc.*
    550 U.S. 398 (2007).......................................................................38

*Personal Web Techs., LLC v. Apple, Inc.*,
    848 F.3d 987 (2017)................................................................35, 36

**Statutes**

28 U.S.C. § 1295(a)(4)(A) ........................................................................1

35 U.S.C. § 142 ........................................................................................1

35 U.S.C. § 318 ........................................................................................1

35 U.S.C. §§ 319, 141(c) ..........................................................................1

**Regulations**

37 C.F.R. § 42.73 .....................................................................................1

37 C.F.R. § 90.3(a)(1) ..............................................................................1

## RULE 47.5 STATEMENT OF RELATED CASES

No other appeal from inter partes review IPR2015-01221, of U.S. Patent No. 8,489,068, was previously before this court or any other appellate court. This appeal has been designated as a companion case to appeal No. 17-1625, which is an appeal from IPR2015-01219 involving U.S. Patent No. 8,626,118. Appellant Securus owns both the '068 and '118 patents.

## JURISDICTIONAL STATEMENT

This appeal arises from the December 7, 2016 final written decision of the Patent Trial and Appeal Board pursuant to 35 U.S.C. § 318 and 37 C.F.R. § 42.73 in IPR No. IPR2015-01221 filed by appellee Global Tel*Link Corp. ("GTL"). The appellant and patent owner Securus Technologies, Inc. ("Securus") timely noticed its appeal on January 23, 2017, in accordance with 35 U.S.C. § 142 and 37 C.F.R. § 90.3(a)(1). This Court has exclusive jurisdiction over Securus' appeal of the Board's final written decision in this IPR under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. §§ 319, 141(c).

## COUNTERSTATEMENT OF THE ISSUES

**1.**    Challenged claim 1 recites the step of "receiving a call connection request … *including* a billing-status code." The prior-art Falcone reference discloses a call connection request and an associated "customer score," which functions as the claimed "billing-status code." GTL's expert testified, and the Board found, that a skilled artisan looking at Falcone would have found it obvious to transmit the customer score as part of, or along with, its call connection request. Does substantial evidence support the Board's conclusion that the claimed step would have been obvious?

**2.**    Challenged claim 1 recites a number of steps that functionally describe a "*call management system*" in relation to a billing platform. The specification similarly describes a prison call management system only in terms of its function as it relates to the billing platform. An invalidating prior-art reference need only describe an element as claimed, and to a similar level of detail as the challenged patent. Did the Board err finding the claims obvious where Falcone disclosed the same functionality, even if the Board did not expressly identify a specific prior-art structure as corresponding identically to the claimed call management system?

## COUNTER STATEMENT OF THE CASE AND FACTS

Securus raises two issues on appeal. At bottom, both amount to a disagreement with the Board about what the prior-art Falcone reference teaches to a person of ordinary skill in the art. Because what Falcone teaches is a factual issue, and because the Board's findings are supported by substantial evidence, this Court should affirm.

To avoid the substantial-evidence standard of review with respect to the "including" issue, Securus attempts to generate a legal issue where none exists. The Board did not err in its application of the obviousness standard, and Securus's attempt to selectively parse the Board's decision in that regard does not withstand scrutiny. With no legal error, this Court should not disturb the Board's ultimate determination of obviousness.

For the "call management system" issue, Securus gets the law wrong. It faults the Board for not finding an explicit structure in Falcone that aligns with the claimed "call management system." But challenged claim 1 is a method claim, and the '068 patent specification describes its "call management system" only in terms of its function or relationship with the billing platform. So all the law requires is that the prior art disclose or make obvious the same function or relationship. GTL and its expert showed that the same functionality would have been obvious to a

skilled artisan looking at Falcone's system at the time of the alleged invention of the '068 patent. The Board agreed and the Court should affirm.

## I.    The '068 patent allows completion of prisoner calls that would have previously been blocked by a prison's call management system by offering alternative billing options to the called party.

According to the '068 patent, many outbound calls from controlled-environment facilities, such as prisons, are not completed because the resident or inmate cannot pay. Appx60, 1:13-17. The '068 patent is directed to increasing revenue from prison telecommunications by offering additional billing options for such outbound calls. Specifically, if the prison's own call management system determines that the outbound call is not billable, an external billing service can receive the call connection request and a billing-status code, and then provide an alternate billing option to the called party. Appx64, 9:29-38. The communication between the billing service and the called party can be via text message. Appx64, 10:11-13.

There are two claimed features of the '068 patent's system and method that are most relevant to this appeal—the "*call management system*" and the "*the call connection request ... including a billing status code*." We discuss each below.

### A.    The "call management system"

The '068 patent teaches that a controlled-environment facility, like a prison, relies on a local telecommunication system, which the patent refers to as a "call

4

management system" ("CMS"), to facilitate inmate telecommunications with the

outside. Appx64, 9:5-8. The prison's call management system allows inmates to

"place telephone calls to friends, family and others." Id. The patent also discloses

using a third-party billing service that is able to complete calls that the prison's call

management system would have otherwise deemed unbillable, and would therefore

have blocked. Appx64, 9:8-14.

Figure 3, Appx58, is reproduced below and is illustrative:



The functionality of an exemplary local telephone service—e.g., a prison's

call management system—is shown to the left of the dashed line. The functionality

of an exemplary third-party billing service is to the right. The CMS determines

when a requested call cannot be billed, and in such situations, passes such a call to

the third-party billing service for completion. Appx64, 9:29-39. The CMS can also receive an acceptance from the external billing system, and a completed call "may then be updated in the prison's call management system." Appx64, 10:3-8.

Importantly, the '068 patent specification does not describe the call management system in terms of its hardware, its structure, or any particular physical design. *See* Appx64, 9:5-10:15. Rather, it is passively described, at a high level, in the context of how the call management system interacts with the third-party billing service or platform. Id. Hence, all the specification provides to the skilled artisan are several, high-level and exemplary functions that a prison's call management system could perform.

Challenged claim 1 uses the term "call management system" consistent with the specification. It is a method claim whose steps are performed by the third party billing system. So the claimed "call management system" is functionally and passively described from that perspective. Claim 1 is reproduced below with the "call management system" emphasized:

1. A method, comprising:

receiving a call connection request from *a call management system*, the call connection request identifying a calling party and a called party and including a billing-status code, the billing-status code indicating a reason why *the call management system* cannot

complete a call connection between the calling party and the called party;

offering the called party at least one billing option to accept the call connection, the at least one billing option not available for use by *the call management system*, the at least one billing option presented to the called party via a text message, the text message indicating that an inbound voice call is being attempted and that the voice call may be completed if the called party indicates acceptance of the text message;

completing the call connection between the calling party and the called party upon the indication of acceptance of the text message by the called party; and

sending *the call management system* a message including billing data for the completed call connection.

Appx64, 10:26-45 (emphasis added).

A "call management system" would thus fall within the scope of the claims if it can send or route a request to make a telephone call to a third-party system along with an indication as to why it cannot complete the call itself. The claim places no physical, structural, or other hardware-type requirements on the call management system. Nor does it require the call management system to couple, connect, or communicate using any specific format or protocol, with the entity performing the claimed steps. In fact, the Board explicitly rejected the notion that

7

the CMS must have certain specific structural elements when it rejected Securus'

proposed claim construction for the CMS during the IPR proceeding. Appx20-22

("We agree with Petitioner that Patent Owner's proposed construction of 'call

management system' overly narrows the scope of the claims").

### B.    "A call connection request … including a billing-status code."

In claim 1 a "call connection request" is received from a "call management

system." The call connection request "include[s] a billing-status code." Appx64,

10:27-30. The scope of these terms is vague because the '068 patent specification

does not use either of the terms "call connection request" or "billing-status code"

outside of the claims themselves.

### 1.    Call connection request

For the "call connection request," it is appropriate to turn to the embodiment

where the '068 patent describes the purported invention in the context of a prison's

"call management system." *See generally* Appx64, 9:5-10:15. There, the

specification simply states that "[t]he inmates place telephone calls to friends,

family and others using a call management system in the prison." Id. 9:6-8.

Thereafter, "[a]n external billing service separate from the prison call management

system processes calls to destination numbers associated with wireless phones." Id.

9:8-10. The '068 patent specification does not use the term "call connection

request," and as a result it also does not limit the form of that request to any specific format or protocol.

The one example of a possible call connection request given in the context of the "call management system" embodiment is that non-billable calls are routed "to the external billing service at a single SIP address." Id. 9:39-40. There, the term "SIP" refers to a "Session Initiation Protocol." *See* Appx62, 6:39-46. This protocol is a well-known, prior-art signaling protocol used for initiating, maintaining, modifying and terminating real-time connections, including voice communication, between two or more endpoints on IP networks. *See e.g.*, Bangor patent, Appx2908-2909. But unlike independent claims 9 and 16, claim 1 does not require any particular message or communication format or protocol for the "call connection request."

The "call connection request" can thus be any request to connect a call, including by passing along or sending the call to a third-party entity. Securus does not challenge on appeal the Board's finding that Falcone's "phone number/transaction request" is a call connection request.

## 2. Billing status code

For the "billing-status code," the '068 patent specification is even less clear. Indeed, even within its own claims, the '068 patent is not consistent—it refers to a "billing-status code" (claim 1, Appx64,10:26-45), a "billing code" (claim 9,

Appx65, 11:8-36), and a "code identifying why requested call connections cannot be completed by the call management system" (claim 16, Appx65, 12:12-31). In the context of a prison call management system, to which the independent claims appear directed, the specification describes a "validation response code and a validation block reason, which indicate the reason that the call in [sic] not billable." *See* Appx64, 9:39-10:2. Other portions of the specification refer to a "block-specific code," a "blocking code," or a "code or other identifier." *See* Appx61, 4:32-64; Appx62, 6:15-19, 6:43, 6:61.

In short, the term "billing-status code" is not used outside of claim 1 and certain claims depending from claim 1, and the '068 patent specification does not define or limit the term beyond its express use in these claims. Securus does not challenge on appeal the Board's finding that Falcone's "customer score" is the claimed "billing status code."

### 3.    Including…

Securus and its expert rely on several embodiments in the '068 patent specification to describe the alleged "call connection request" as it relates to the alleged "billing-status code."[2] Securus Br. at 6-7.

---

[2] Recall that the '068 patent specification does not use these two terms outside of the claims.

One embodiment Securus relies on is set forth at Appx61, 4:25-67. *See* Securus Br. at 6-7. In that embodiment, "[t]he system identifies why the call has been blocked and assigns a block-specific code to the call. The call information and the blocking code are then passed to a logic engine that determines what payment, connection, or call flow options are available for the call." Appx61, 4:33-37. All that the patent discloses here is that the call information and the blocking code be "passed to" a logic engine. This embodiment provides no other specific details regarding the form of the call information or the blocking code, or how they are specifically related—only that both are passed along.

Another embodiment Securus relies on is set forth at Appx62, 6:15-20. *See* Securus Br. at 6, 7. That embodiment similarly discloses that "[w]hen a separate third-party entity is used, the service provider sends call information to the third-party entity, such as call routing information and a blocking code that indicates why the call was not completed…." Appx62, 6:15-19. Once again, this embodiment provides no specific details regarding the form of the call information or the blocking code, or how they are specifically related—only that they are both sent to the third-party entity.

Finally, Securus relies an embodiment set forth at Appx62, 6:31-46. Securus Br. at 7. In that embodiment, the '068 patent specification teaches that the validation response code and validation block reason can be conveyed as part of a

11

SIP header. Appx64, 9:40-48. That particular embodiment is set forth in independent claims 9 and 16. But independent claim 1has no such requirement.

In short, the '068 patent specification provides several non-limiting, and non-exclusive examples showing how the "call information" and the "blocking code" are transmitted—they are simply "passed" or "sent" together, or they may be part of the header in a SIP message. Any of these embodiments, according to Securus and its expert Mr. Walton, would qualify as the claimed "call connection request" that identifies the calling party and includes a billing status code. *See* Securus Br. at 7 (*citing* Appx61, 4:33-37; Appx62, 6:15-46; Appx3972-3973, Walton Dec., ¶¶43-45).

### C.    Response to Securus's allegations with respect to its '068 patent.

There are several specific points in Securus's description of the '068 patent that require heightened scrutiny.

*First*, the figure that Securus relies on to explain how the '068 patent works is not from the '068 patent. Securus Br. at 6. It is a "figure" made up by Securus's expert. *See* Appx3971-3972, Walton Dec., ¶42. Notably, Securus suggests that the "CCR"—i.e., the "call connection request"—must be some sort of data stream with an embedded "CODE." Id. But as described above, at least two of the embodiments upon which Securus relies have no such requirement or detail—they simply state that call information and a blocking code are "passed to" a logic

12

engine, or "sent to" a third-party entity. *See* Appx61, 4:33-37; Appx62, 6:15-20. The only embodiment suggesting that the blocking code is actually part of message, as Securus's made up drawing shows, is the embodiment that includes the code in a SIP header. *See* Appx62, 6:39-46; Appx64, 9:40-48. But claim 1 does not require the use of SIP, or any other specific communication protocol.[3] Appx64, 10:26-45.

*Second*, Securus's made-up figure suggests, and Securus states, that "the call management system assigns a code to the call that indicates why the call could not be completed." Securus Br. at 6, *citing* Appx61, 4:33-35. However, the specification never actually says that the "call management system" does this. The specification merely states that "[t]he system identifies why the call has been blocked and assigns a block-specific code to the call." *See* Appx61, 4:32-37. But "the system" in the cited embodiment is not the "call management system," which is described at Appx64, 9:5-10:15. Rather, the embodiment that Securus points to appears to be an embodiment where all of the steps are performed by the same entity. *See* Appx62, 6:11-12 ("In one embodiment, all of the steps 101-121 are performed by the same entity"). The '068 patent specification never specifically identifies what specific element(s) actually assigns the "code" to the call. This is

---

[3] Independent claims 9 and 16 do specifically recite using a SIP message, but not claim 1. In any event, use of SIP messages is taught by Bangor. Appx42-46; Appx2029-2036.

important because Securus repeatedly faults the Board for allegedly not identifying in the prior art what specific element carries out this function.

*Third*, Securus's made-up figure suggests, and Securus states, that the "billing platform … connects the pending, previously-blocked call." Securus Br. at 7. However, the '068 patent is not limited to connecting pending previously-blocked calls. Instead the patent also discloses connecting future calls between the calling and called party. For example, the '068 patent discloses a system that "makes a call and/or sends a text message to the called party to notify them that an inmate is trying to reach them and provides options on how to receive calls from inmates in the *future*" if, for example, "the called party does not answer the call or if the call was not connected for some reason." Appx60, 2:15-22 (emphasis added); *see also* Appx61, 3:40-48, 4:4-8.

This distinction is important because nothing in claim 1 of the '068 patent requires the "complet[ed] call connection" be the same call connection that the call management system previously blocked. Appx3199-3200, Forys Reply Dec., ¶50. Indeed, claim 1 states that the call connection is merely a "connection between the calling party and the called party." There is no temporal limitation imposed on when the call connection must be completed. Id. Similarly, nothing in claim 1 prevents the calling party from hanging up after the call is blocked by the call management system, and then calling back at future time. Id. In this scenario, the

future call connection would still represent a "connection between the calling party and the called party," the completion of which would still satisfy the "completing the call connection between the calling party and the called party" limitation of claim 1. Id. Indeed, Securus's expert Mr. Walton testified that the claimed "call connection request" could refer to either an initial call attempt or a subsequent call attempt between a calling and called party. Appx3340-3348, Walton Tr., 130:1-138:12.

* * *

In short, the '068 patent specification and claims are not as narrow or specific as Securus and its made-up drawing suggest. We turn next to the Falcone prior-art reference.

## II. The prior-art Falcone reference also allows completion of prisoner calls that would have previously been blocked by offering alternative billing options to the called party.

Falcone is the primary reference in the IPR proceeding, and its teachings are the focus of Securus's appeal here. Like the '068 patent, Falcone's invention is set in the context of prison telecommunications. Appx2922, 1:50-60. And like the '068 patent, Falcone seeks to improve telecommunication revenue from previously blocked calls by offering different billing options to called parties via a separate billing platform. See Appx2923, 3:55-4:3, 4:60-65; Appx2925, 7:57-62. As part of its service, Falcone also discloses generating a "customer score" for "optimizing

15

and maximizing profitability." Appx2924-2925, 6:61-7:24. Falcone's disclosure is broad and varied with respect to the relationships between its various systems and applications. In fact, Securus erroneously attempted to discount Falcone's disclosure because it included more implementation details than the '068 patent.

### 1. Falcone's call management system.

One of Falcone's exemplary systems upon which GTL and the Board rely is depicted by Figure 8, reproduced below.



In this embodiment, Falcone's call management system can be implemented in its entirety as a telephony system at a controlled facility such as a correctional institution. Appx2924, 6:6-10. In that embodiment, "[s]ubscriber device 802 may be communicatively coupled to call processing platform 801 at the controlled facility." Appx2924, 6:8-9. Element 806 is an interface using any suitable communication protocol. Id., 6:13-14.

Importantly, this embodiment also includes a "validation application" 807. The validation application receives the call connection request and "determines whether payment may be received" and "communicates the determination to the call processing application 810." Appx2924, 6:14-18. GTL's expert Dr. Forys testified that the validation application 807 includes functionality that is similar to a second embodiment in Falcone. Specifically, he testified that it is similar to iCSS 100 and that a person of ordinary skill in the art would understand "at least parts of iCSS 100 could similarly be implemented 'at a controlled facility.'" Appx3190-3191, Forys Reply Dec., ¶34. The Board found this embodiment of Falcone and Dr. Forys's testimony about it to be compelling, citing to the figure 8 embodiment and the testimony in its final written decision. Appx28, Appx34. Securus largely ignored this embodiment and Dr. Forys's testimony in its statement of the facts.

Another one of Falcone's embodiments is set forth in Figures 1 and 2, which illustrate an "intelligent call and billing management solution (iCBS) 10[, which] comprises a multi-application system for optimizing and maximizing profitability of business transactions." Appx2924, 6:61-64. Figure 1 has a high-level overview, while Figure 2 provides more details with respect to each application. Figure 1 is reproduced below:



FIG. 1

The iCBS 10 includes various applications, including an intelligent customer scoring system (iCSS) 100, intelligent revenue opportunity module (iROM) 101, and an intelligent direct billing system (iDBS) 102. Importantly, iCBS 10 also includes a billing customer database 104. That database may be located in a variety of places, including at the "prison telecommunication service provider." Appx2925 7:17-21.

Figure 2, reproduced below, shows an embodiment of Falcone's "multi-application system."



FIG. 2

Nothing in Falcone restricts where these various applications are located. Indeed, in the embodiment disclosed by figure 8 (described above), the entire call processing platform can be "implemented as a telephony system at a controlled facility." Appx2924, 6:6-10. And GTL's expert therefore testified that "a person having ordinary skill in the relevant art would understand that at least parts of iCSS 100 could be implemented 'at a controlled facility.'" Appx3190, ¶34. Falcone in fact discloses that certain components of iCSS 100 can be "physically located at the same facilities, different facilities, in a local area network (LAN), [or in] a wide area network (WAN)," to provide some examples. Appx2925, 7:19-24.

Turning to Falcone's specific applications, it discloses that iCBS 10 is first implemented when "an inmate enters phone number/transaction request 20 into a prison phone, which requests the transaction of a collect call." Appx2925, 7:36-39; Appx2926, 10:5-11. As illustrated in Figure 2, a component of iCSS 100 receives the phone number/transaction request 20 from the prison phone system—i.e., from a prison's call management system. Appx2926, 10:5-11. Falcone's "prison telecommunication service" can do things like pre-select a "risk threshold 203" against which the "iT brain 200" can compare a "customer score." Appx2926, 10:55-57. Falcone's prison phone system can also include the "billing and customer database (BCD)." Appx2925, 7:12-24 ("BCD 104 is 'local' to the prison telecommunication service provider."). Therein, Falcone's prison phone system

can store information about a customer, which can be used "for future use and evaluation of the customer scores." Appx2925, 7:17-20.

*    *    *

Taken together for all that it teaches, Falcone's disclosure of a prison call management system is broad. And just like the '068 patent, Falcone also provides applications for optimizing profitability by providing alternate billing arrangement for called parties.

### 2.    Falcone's customer score functions as the claimed "billing-status code."

The Board found, and Securus does not dispute on appeal, that Falcone's customer score is equivalent to the '068 patent's "billing-status code." They both indicate why the prison's telecommunication system could not complete a call. Specifically, after receiving the phone number/transaction request, iCSS 100 either establishes an "initial customer score," or refines a previously-established customer score, which iCSS 100 then passes along to iROM 101 for processing. Appx2924, 6:64-65; Appx2926-2927, 10:64-11:27.

The purpose behind Falcone's "initial customer score" and "refined customer score" is broad and it may vary from application to application. In some embodiments, a customer score "may represent a predicted risk management score used to authorize or deny requested transactions." Appx2925, 7:2-6. In other embodiments, a customer score "may represent a profitability value of [a]

customer." Id, 7:6-7. For example, iDBS 102 may "select[] any one of a number of direct billing products for a customer responsive to customer score-based determinations made within iROM 101." Id., 7:8-12.

Therefore, like the '068 patent's "billing-status code," Falcone's "initial customer score" and "refined customer score" can indicate a reason why a requested call connection cannot be completed. It can also provide billing information associated with a customer. Securus does not dispute the functionality of Falcone's "customer score" on appeal.

### 3. Including…

GTL's expert Dr. Forys explained what the skilled artisan looking at Falcone would have understood with respect to the relationship between Falcone's phone number/transaction request—i.e., the call connection request—and Falcone's customer score. Specifically, Dr. Forys testified that "the transaction request 20 ('*call connection request*') is also associated with a customer score ('*a billing status code*')." Appx2770, Forys Dec., ¶212 (emphasis in original). In support, Dr. Forys pointed to Falcone's disclosure that "a higher risk customer score may be paired with a low-risk billing and collection method." Id., *citing* Appx2925, 8:19-23.

Securus responded that "associated with" was not sufficient to meet the "including" limitation. Appx2279-2280. GTL and Dr. Forys responded by pointing

to Falcone's broad disclosure of various embodiments and applications that, taken together, would have made it obvious that customer score 202, and the block determination transmitted by validation application 807 "can both be generated and transmitted from the prison facility as part of a '*call connection request*.'" Appx3190-3191, Forys Reply Dec., ¶34 (emphasis in original). The Board found that testimony compelling, finding that when the phone number/transaction request originates from such a facility, a customer score (e.g., an "initial customer score") would be "part of" the phone number/transaction request. Appx34.

In other embodiments, a phone number/transaction request can originate from a controlled facility having a billing and customer database (BCD) 104. Appx2925, 7:12-24; Appx2928, 13:34-49. And as the Board also agreed, when the phone number/transaction request originates from this type of facility, a customer score (e.g., a "refined customer score") would be transmitted "along with" the phone number/transaction request. Appx34; *see also* Appx1012-1013, Oral Argument Record, pp. 13-14.

*     *     *

Falcone goes on to teach that once a called party accepts one of the payment options, which are offered based on the customer score, Falcone's system connects the calling party to the called party, thereby completing the call. Appx2924, 5:56-59, 6:44-46; Appx2925, 7:53-62; and Appx2929, 14:37-39. Following completion

of the call, "[c]all processing application 810 may create a call record in call transaction database 811," which may include "identification of the origination source, the called phone number, whether the call was connected or blocked, the length of the phone call (if applicable), and/or the like," Appx2924, 6:19-26, as well as "the payment history of a particular customer or owner of the destination number ... [or] the type of transaction requested," Appx2926, 10:23-33.

## III.    Proceedings before the Board.

Securus's description of the proceedings before the Board is generally correct. We respond here to some of Securus's specific allegations that merit closer review.

### A.    Contra Securus, the Board understood the Petition to allege that Falcone's call connection request included its customer score.

Securus alleges "the petition did not allege that Falcone's phone number/transaction request 20 includes Falcone's customer score." Securus Br. at 12. Instead, says Securus, "the petition only alleged that Falcone's transaction request (the alleged call connection request) is 'associated with' a customer score (the alleged billing status code)." Id.

It is true that GTL's petition did not recite the exact claim language. However, the Board correctly found that the petition was clear enough on this point and it unambiguously put Securus on notice of that finding in its institution decision. There, the Board found that "[i]ncluded in this transaction request is

23

information that is used to identify and verify the called party." Appx2206. The Board also found that "Falcone's system is also applicable to customer's [sic] already in the database, such that the information about the called party would convey the preexisting customer score." Appx2209. The Board thus concluded in its institution decision that "the customer score would not be generated after the call request, as Patent Owner alleges, and the information contained in the call request would provide the basis for determining if a call should be blocked or connected." Id.

Securus was thus on notice, for the entire trial, of GTL's position and the Board's finding that it would have been obvious to include Falcone's customer score with its call connection request in at least some embodiments of Falcone, even if Falcone does not expressly disclose it. The Board maintained that position in its final written decision, stating that "Petitioner also suggests that the customer score could be part of that information, i.e., transmitted with the request." Appx34, *citing* Appx2046-2047.

Securus's complaint that GTL's petition did not expressly recite the claim language rings hollow. The Board understood GTL's petition to be sufficient in that regard. And the Board consistently conveyed that fact to Securus multiple times during the trial, including in its institution decision.

24

**B.    Contra Securus, GTL's reply did more than argue what is "possible" in Falcone's various embodiments.**

Securus alleges that "instead of offering evidence to explain why it would have been obvious to include the customer score in the transaction request, GTL argued that it was possible to do so: 'customer score 202 transmitted by iCSS 100, and the blocking determination transmitted by validation application 807 can both be generated and transmitted from the prison facility as a part of a "call connection request." Securus Br. at 15. However, Securus misrepresents what GTL said in its Reply.

Specifically, GTL reminded Securus that "as recognized by the Board, a PHOSITA would have understood that when such a refined customer score is 'stored in the local database,' it would be transmitted from a system at the prison facility as part of (i.e., included within) phone number/transaction request 20. (See Decision, p. 13 ('the information contained in the call request [(e.g., the refined customer score)] would provide the basis for determining if a call should be blocked or connected')." Appx2386. Additionally, GTL's use of the word "can" in the quote that Securus focuses on above merely refers to the fact that Falcone includes many different embodiments. In certain embodiments, the customer score (i.e., the claimed "billing-status code") would be included in the call connection request, while in others it may not. Thus, the use of the term "can" does not refer to some hypothetical scenario not contemplated by Falcone, as Securus suggests.

This is important because it cuts against Securus' main argument that the Board incorrectly applied the obviousness standard in evaluating the "including" limitation from claim 1.

### C.   Contra Securus, the Board addressed the "including" requirement.

Securus alleges that the Board "never substantively addressed" Securus's argument regarding whether Falcone's call connection request "includes" the customer score. Securus Br. at 17. This is not true.

The Board stated in its final written decision that "as discussed in the Institution Decision, Falcone's system is also applicable to customers already in the database, such that the information about the called party would convey the preexisting customer score, so that the customer score would not be generated after the call request, as Patent Owner alleges." Appx34. Additionally, the Board relied on the embodiment set forth in Falcone's figure 8—namely, Falcone's disclosure of validation application 807, which is capable of generating the customer score, and also being located at the prison facility. Id. The Board thus expressly concluded that "a customer score can be generated and transmitted from the prison facility as part of the call connection request." Id.

The Board thus addressed Securus's argument, which is nothing more than an ill-fated attempt to fault the Board for not using the exact claim language, just like it faults GTL's petition for not using the exact claim language.

**D.    Securus largely wasted its sur-reply.**

Securus argued to the Board that GTL's reply brief was out of scope. Appx2421. It asked for a sur-reply or permission to move to strike portions of GTL's reply. Id. The Board authorized a limited sur-reply for Securus to address allegedly new arguments. But rather than take full advantage of its sur-reply to address GTL's allegedly our-of-scope arguments, Securus improperly dedicated the majority of its sur-reply to arguing why GTL's reply was improper. Appx2447-2449; Appx2453.

Securus does not repeat this argument on appeal. This is important because the Board properly relied on GTL's reply and Dr. Forys's reply declaration, Appx33-34,[4] to support its finding that the skilled artisan would have found it obvious to have transmitted Falcone's customer score with a call connection request, at least in some embodiments.

## SUMMARY OF THE ARGUMENT

**The Board did not apply the wrong obviousness standard for the "including" requirement.**

Securus's allegation that the Board applied the wrong obviousness standard rests on a selectively parsed reading of the Board's decision that ignores key

---

[4] Even though the Board stated that "[w]e base our analysis herein on the analysis originally made in the Petition," the Board nonetheless also relied on GTL's reply and reply evidence to make several finding in support of its final determination of obviousness.

evidence and the Board's central findings upon review of that evidence. Securus

Br. at 2-3, 19, 23-25, *citing* Appx33-35. Securus thus does not accurately portray

the totality of the Board's findings or its holding, and its attempt to squeeze the

facts here into cases like *Belden v. Berk-Tek* does not withstand careful scrutiny.

The Court should reject Securus's attempt to turn the Board's fact-finding with

respect to what Falcone teaches into a legal issue.

In actuality, the Board relied on Falcone itself and GTL's expert to find that

in Falcone, a preexisting customer score can be stored at, and transmitted from, the

prison facility along with Falcone's transaction request. The Board also found that

any call connection request from Falcone's prison facility would need to include

identifying information about the calling party, and would thus convey the

preexisting customer score along with the call connection request. The Board's

findings are supported by substantial evidence, and its ultimate conclusion of

obviousness does not run afoul of this Court's obviousness jurisprudence.

**The Board properly found that Falcone discloses the claimed "call management system" in the same way as it is described and claimed in the '068 patent.**

Independent method claim 1 passively recites the "call management system"

in terms of what it does—i.e., its functionality—in relation to the billing platform.

And in the '068 patent specification, the call management system is likewise

described only in terms of its functionality. The specification does not ascribe any

particular structure or hardware to the call management system—not in the written description, not in any figure, and not in any claim. The Board thus appropriately relied on Falcone's described functionality to find that Falcone would have disclosed or suggested the claimed "call management system" to a person of ordinary skill in the art. Securus's complaint that GTL and the Board allegedly failed to point to specific structure in Falcone to find the call management system, even if true, rigs hollow and is legally unsound.

## STANDARD OF REVIEW

Securus has the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). The only challenge that Securus makes on appeal is whether the Board correctly determined that the challenged claims would have been obvious over the cited prior art.

This Court reviews the Board's legal determination of obviousness de novo and its factual findings for substantial evidence. *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015). The scope and content of the prior art are questions of fact. *In re Mouttet*, 686 F.3d 1322, 1330 (Fed. Cir. 2012). Whether a person of ordinary skill in the art would have been motivated by the prior art to arrive at the claimed invention is also a question of fact. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000).

Substantial evidence for review of fact questions is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Where "two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

## ARGUMENT

### I.    The Board properly concluded that the "including" limitation would have been obvious over Falcone.

Securus attempts to convert a disagreement with respect to what Falcone teaches into a legal issue by arguing that the Board used a wrong legal standard for obviousness. The Board made no such error and substantial evidence supports the Board's ultimate determination of obviousness.

### A.    Securus's selective parsing of the Board's decision does not withstand careful scrutiny.

Securus argues that the Board "improperly conflated a possibility ('can be' and 'could be') with the legal standard for obviousness ('would have been obvious')." Securus Br. at 23. To support its argument, Securus selectively parses the Board's "four-paragraph discussion" and then attempts to squeeze the Board's analysis into this Court's decisions in *Belden*, *Personal Web*, and *InTouch Techs*. Securus's arguments are factually flawed because its attempt to parse the Board's

30

decision overlooks or leaves out salient facts. When the facts are properly understood, this case does not run afoul of this Court's obviousness jurisprudence. We begin with Securus's flawed reading of the Board's decision.

*First*, Securus glosses over the first two paragraphs of the Board's analysis, stating barely more than that the Board "summarize[d] the parties' arguments." Securus Br. at 23. But the Board's review is relevant because the Board expressly points to evidence that it found compelling, including GTL's reply briefing and reply declaration from Dr. Forys. Appx34. Its review is also relevant because review of that evidence shows the basis for the Board's findings with respect to Falcone.

Specifically, Dr. Forys testified that Falcone's "validation application 807 can be implemented 'at a controlled facility such as a correctional institution.'" Appx3190-3191, Forys Reply Dec., ¶ 34. Dr. Forys then testified that "validation application 807 includes functionality similar to iCSS 100" and that a POSA "would understand that at least parts of iCSS 100 could similarly be implemented 'at a controlled facility.'" Id., *citing* Appx63, 7:11-24. Dr. Forys then concluded that "[a]s such, customer score 202 transmitted by iCSS 100, and the blocking determination transmitted by validation application 807 can both be generated and transmitted from the prison facility as part of a '*call connection request.*'" Appx3190-3191 (emphasis in original).

31

The record thus shows that Dr. Forys did not testify in terms of probabilities or possibilities. He unambiguously testified about what that embodiment in Falcone *can* do and what a POSA *would* have understood. The Board expressly found Dr. Forys's testimony to be compelling, concluding that "[w]e do not find Patent Owner's argument to be persuasive and agree with Petitioner." Appx34. Securus's brief ignores this.

*Second*, in what it refers to as the Board's "analysis" section, Securus complains mightily about the Board's statement that "Petitioner suggests that the customer score could be part of that information, i.e., transmitted with the request." Securus Br. at 23-24, *citing* Appx34. But that is not a Board finding—it is the Board attempting to relay GTL's position. But even then, Securus failed to note that the Board did not accurately relay GTL's position. GTL never said that Falcone's customer score "could be part of that information"—rather, when discussing the "including" feature, GTL argued in its petition that "the transaction request 20 is also associated with a customer score." Appx2047; *citing* Appx2925, 7:2-12. And GTL argued in its reply that, in several Falcone embodiments, Falcone's blocking determination or customer score "would [have been] transmitted from a system at the prison facility as part of (i.e., included within) phone number/transaction request 20." *See* Appx2385-2386.

The Board, in turn, has consistently understood those embodiments in Falcone to support its conclusion that "one of ordinary skill in the art would have found it obvious to have transmitted the customer score, in Falcone, along with the call connection request." Appx34.

\*        \*        \*

Securus is simply wrong when it states that "the Board relied solely on GTL's argument that the customer score *could be* a part of the transaction request." Securus Br. at 24 (emphasis in original). GTL's argument and the evidence supporting it are far more robust than that. The Board recognized and cited to that evidence and found it persuasive.

### B.    The Board did not apply the wrong obviousness standard.

Securus relies on this Court's decision in *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064 (Fed. Cir. 2015) to support its thesis that the Board erred legally by conflating a "possibility" with "the legal standard for obviousness." Securus Br. at 23. Specifically, Securus relies on this Court's statement in *Belden* that "obviousness concerns whether a skilled artisan not only could have but would have made been motivated to make the combinations or modifications of prior art to arrive at the claimed invention." *Belden*, 805 F.3d at 1073. There are at least two problems with Securus's thesis of legal error.

33

*First*, as GTL demonstrates above, the Board did not rely solely on "possibilities" when evaluating what Falcone teaches in view of GTL's expert's testimony. The Board considered the parties' arguments, Falcone, and the parties' expert testimony. It recognized that "[a] reference must be considered for everything that it teaches, not simply the described invention or a preferred embodiment." Appx36, *citing In re Applied Materials, Inc.*, 692 F.3d 1289, 1298 (Fed. Cir. 2012). Securus's allegation with respect to what the Board relied on does not bear close scrutiny, which removes one key pillar of Securus's argument.

*Second*, Securus also seems to suggest that under *Belden*, it is error, per se, to argue what a skilled artisan "could have made" in view of the prior art. That is wrong. What the skilled artisan "could have made" is still a relevant finding, as long it is paired with a motivation for actually doing so. *Belden*, 805 F.3d at 1073. And here, the Board found compelling the motivation set forth in GTL's petition and supported by GTL's expert. Specifically, "for the called party to be informed that an inmate was trying to call them, the transaction request would need to include identifying information about the calling party." Appx34, *citing* Appx2046-2047. The Board found that that information would convey any preexisting customer score. Id. The facts here are thus different from *Belden*.

The facts are also different from *InTouch Techs., Inc. v. VGo Commc'ns, Inc.*, 751 F.3d 1327 (Fed. Cir. 2014), upon which Securus also relies. Securus

34

suggests there that this Court "reversed a judgment of invalidity because the patent challenger's expert opined that one skilled 'could combine' the references to meet the claim limitation, 'not that they *would* have been motivated to do so." Securus Br. at 24-25 (Securus's emphasis). It is true that the expert in *InTouch Tech.* so testified, but there were many other deficiencies in the testimony leading to the reversal, such as using the challenged patent as a roadmap to combine references, failing to address the motivation to combine *at the time of invention*, and failing to consider the objective evidence of non-obviousness put forward by the patent owner. *See InTouch Techs.*, 751 F.3d 1351-52. None of these deficiencies exist here, nor has Securus argued as much.

This Court's decision in *Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987 (2017) is also distinguishable. There, the Court was concerned with the Board's rational for combining two separate references—Woodhill and Stefik—in the context of "locating data and controlling access to data." In *Personal Web*, this Court acknowledged that "[t]he amount of explanation needed to meet the governing legal standards—to enable judicial review and to avoid judicial displacement of agency authority—necessarily depends on context." *Id.* at 994. So simple and familiar technology may require only a brief explanation; but complex and obscure technology may require more detailed explanations. *Id.* at 993-994. The situation is different here where all of the disclosure upon which GTL and the

Board rely to teach the disputed limitation resides in a single reference—Falcone. Moreover, the issue at hand here is not complex—namely, whether the skilled artisan would have found it obvious to include Falcone's customer score with a phone/number transaction request coming from Falcone's call management system. *Personal Web Techs.*, while instructive, is not dispositive of the facts here.

*Finally*, Securus has not challenged whether the skilled artisan would have been motivated to include Falcone's customer score with its phone/number transaction request, especially in light of Falcone's disclosure of various broad embodiments. Nor has Securus challenged whether the skilled artisan would have had a reasonable expectation of success in making the claimed invention based on Falcone's disclosure. In sum, Securus has not pointed to any facts here, or any case from this Court that suggests that the Board here committed any reversible legal error.

*    *    *

For the above reasons, this Court should reject Securus's attempts to fabricate a legal error where none exists. Securus's actual argument is nothing more than a factual disagreement with GTL and the Board over what Falcone teaches. As GTL explains next, substantial evidence supports the Boards findings on what the skilled artisan would have understood that Falcone teaches.

**C.    Substantial evidence supports the Board's finding that Falcone's "customer score" is the same as the claimed "billing status code" and that it would have been obvious to include it with a phone number/transaction request.**

In support of its final determination that the skilled artisan would have found it obvious to include a customer score with a call connection request, the Board made the following findings:

- The Board reviewed the parties arguments and concluded that "[w]e do not find Patent Owner's argument to be persuasive and agree with Petitioner." Appx34-35.

- The Board found that "[a]s discussed in the Petition, a person of ordinary skill in the art would have understood that in order for the called party to be informed that an inmate was trying to call them, the transaction request would need to include identifying information about the calling party." Appx34.

- The Board found that "as discussed in the Institution Decision, Falcone's system is … applicable to customers already in the database…." Appx34.

- The Board found that "the information about the called party would convey the preexisting customer score, so that the customer score would not be generated after the call request, as Patent Owner alleges." Appx34.

In view of these findings, which are entitled to deference, the Board concluded that "one of ordinary skill in the art would have found it obvious to have transmitted the customer score, in Falcone, along with the call connection request."

Appx34. That is all the '068 patent requires with respect to the relationship

between the claimed "call connection request" and the "billing-status code." *See*

*supra* Counter Statement of Case, Section I.B.3.

*    *    *

At bottom, Securus disagrees with GTL and the Board about what Falcone

teaches with respect to the relationship between its customer score, its telephone

number/transaction request, and its call management system. The Board made no

legal error in its application of this Court's obviousness jurisprudence. Because the

Board's findings are supported by substantial evidence in GTL's petition, expert

declaration, and in Falcone itself, this Court should affirm.

## II.    Substantial evidence supports the Board's determination that Falcone discloses the claimed "call management system."

Securus argues that the Board erred by not pointing to specific structures in

Falcone that correspond to the claimed "call management system." Securus Br. at

28. But the Board did not have to point to any specific structure. It was only

required to find the same functionality, which it did.

An obviousness "analysis need not seek out precise teachings directed to the

specific subject matter of the challenged claim, for a court can take account of the

inferences and creative steps that a person of ordinary skill in the art would

employ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Accordingly, a

prior-art reference need not "clearly and unequivocally disclose" a claimed feature

38

for that reference to nonetheless render a claim obvious where it at least "suggests the possibility of" the claimed feature. *See Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 964 (Fed. Cir. 2014). It is thus long-settled that a reference stands for all of the specific teachings thereof as well as the inferences one of ordinary skill in the art would have reasonably been expected to draw therefrom. *See In re Fritch*, 972 F.2d 1260, 1264-65 (Fed. Cir. 1992); *In re Preda*, 401 F.2d 825, 826 (C.C.P.A. 1968).

Here, representative claim 1 is a method claim. It recites a "call management system," but only in the context of what the call management system does in relation to the billing platform. Securus complains that the Board did not identify any specific system in Falcone that corresponds to the claimed "call management system." But as GTL explained above, the '068 patent also does not describe a specific system that corresponds to the call management system. *Supra*, Counter Statement of the Facts, Section I.A. The '068 patent specification, like claim 1, speaks of the call management system only at a high level, and only in terms of how it relates to the billing platform. *See generally* Appx64, 9:5-10:15. It does not provide a single hardware, software, or firmware requirement of the system. Id. It does not have a diagram or figure showing how the call management system might relate to the billing platform, except perhaps for the most basic and high level "facility telephone system" illustrated in Figures 4 and 5. *See* Appx57, Appx59. In

fact, the Board explicitly rejected the notion that the CMS must have certain specific structural elements when it rejected Securus' proposed claim construction for the CMS during the IPR proceeding. Appx20-22 ("We agree with Petitioner that Patent Owner's proposed construction of 'call management system' overly narrows the scope of the claims"). Securus does not challenged the Board's construction on appeal.

It was thus appropriate for GTL and the Board to look to Falcone's functionality, and to not focus on matching up any particular structure in Falcone with the passively-claimed call management system. And that is precisely what the Board did here. Specifically, the Board was persuaded that "the Petition asserts that some entity in Falcone transmits a transaction request and an associated customer score to the iCBS, and that the particular entity is equivalent to the claimed CMS." Appx36. The Board then observed that "although no specific element is disclosed as being identical to the claimed CMS, the fact that the functionalities are disclosed by Falcone, as discussed above, and are sufficient to demonstrate that Falcone and Jiang teaches or suggests these elements of claim 1." Id. This was not error under the relevant case law. The Board thus concluded that "Falcone teaches or suggests the claimed CMS, based on the functions explicitly recited in claim 1." Appx32.

Because substantial evidence supports the Board determination, this Court should affirm.

## CONCLUSION AND RELIEF SOUGHT

For the reasons discussed above, the Court should affirm the Board's decision in all respects.

Dated: June 30, 2017

Respectfully submitted,

/s/ Jon E. Wright

Jon E. Wright
Michael D. Specht
Michael Bradley Ray
Ryan C. Richardson
**Sterne Kessler Goldstein & Fox PLLC**
1100 New York Avenue, NW
Washington, DC  20005
202.371.2600

*Counsel for Appellee,*
*Global Tel\*Link Corporation*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on ___June 30, 2017___
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| Jon E. Wright | /s/ Jon E. Wright |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Sterne, Kessler, Goldstein & Fox P.L.L.C. |
| Address | 1100 New York Avenue, NW |
| City, State, Zip | Washington, DC 20005 |
| Telephone Number | (202) 772-8651 |
| Fax Number | (202) 371-2450 |
| E-Mail Address | jwright@skgf.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 8513 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2010 in 14 point Times New Roman.


/s/ Jon E. Wright
Jon E. Wright
*Counsel for Appellee*
June 19, 2017


**2035641_1.DOCX**